IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, | CASE NO. 8:14-cv-257 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| RBM CONSULTING, LLC. | |
| Defendant. | **JURY TRIAL REQUESTED IN OMAHA** |

Plaintiff, Election Systems & Software, LLC ("ES&S") states and alleges the following for its claims against Defendant RBM Consulting, LLC ("RBM"):

**Parties, Jurisdiction and Venue**

1.  ES&S is a Delaware limited liability company with its principal place of business in Omaha, Nebraska. ES&S is a worldwide provider of end-to-end, fully integrated voting systems that support every phase of the election process, which includes the manufacture and sale of voting machines and the software products that control them.

2.  RBM is a limited liability company organized under the laws of Illinois, with its principal place of business in Illinois, and authorized to do business in Nebraska. RBM is involved in the elections business in multiple jurisdictions across the United States, including Nebraska. Upon information and belief, RBM has recently solicited business in and/or from Nebraska; RBM has contacts with Nebraska; and at least some of the acts alleged herein occurred in or from Nebraska sufficient to afford a basis for

the exercise of personal jurisdiction consistent with the Constitution of the United States and Neb. Rev. Stat. §25-536(a) and (d).

3. This nature of this case is patent infringement under Title 35 of the United States Code, unfair competition under Title 35 of the United States Code, and conversion under Nebraska state law.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1) as this action arises under the laws of the United States, is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of costs and interest.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because the intellectual property that is the subject of this dispute was created in Nebraska. Venue is also proper under 28 U.S.C. § 1391(a)(3) because RBM is subject to personal jurisdiction in the District of Nebraska and at least some of the acts complained of here occurred in or from Nebraska.

## Factual Background

*The '644 Patent*

6. ES&S employees researched and developed novel methods for analyzing marks made on a response sheet, such as a ballot.

7. On September 16, 2002, United States Patent Application No. 10/244,785 was filed with the United States Patent and Trademark Office ("USPTO") to protect the invention of novel methods for analyzing marks made on a response sheet, such as a ballot.

8. On February 15, 2005, the United States Patent and Trademark office issued United States Patent No. 6,854,644 ("the '644 Patent"). A true and correct copy of the '644 Patent is attached hereto as Exhibit "A" and is incorporated herein by reference.

9. ES&S is the owner and assignee of all right, title and interest in and to the '644 Patent, including the right to assert all causes of action arising under said '644 Patent and the right to any remedies for infringement of it. As owner of the patent and the rights to the invention secured by the same, ES&S incorporates the patented technology into various voting machines that it manufactures. The patented technology is referred to as "Intelligent Mark Recognition" or "IMR." ES&S installs and uses the IMR technology in several of its voting machines, including but not limited to the M100™ Precinct Scanner and Tabulator.

*The '329 Patent*

10. On December 10, 1996, the USPTO issued U.S. Patent No. 5,583,329 ("the '329 Patent"), which was subsequently acquired by ES&S. A true and correct copy of the '329 Patent is attached hereto as Exhibit "B" and is incorporated herein by reference.

11. Summarily stated, the '329 Patent involves the invention of "smart technology" used in a "Personalized Electronic Ballot," or "PEB," that communicates and interacts with a voting machine to program a particular election as well as to record and confidentially store the ballot of an individual voter. Only a PEB with the "smart technology" of the invention in the '329 Patent can communicate and interact with voting

machines using this technology and perform the necessary tasks to run an accurate and secure election as well as maintain the privacy of an individual ballot.

12. ES&S is the owner and assignee of all right, title and interest in and to the '329 Patent, including the right to assert all causes of action arising under said '329 Patent and the right to any remedies for infringement of it. As owner of the patent and the rights to the invention secured by the same, ES&S incorporates the patented "smart technology" into the PEB's and certain voting machines that it manufactures. ES&S installs and uses the "smart technology" in all voting machines that use a PEB, such as the iVotronic® DRE.

*The '244 Patent*

13. On June 17, 2008, the USPTO issued U.S. Patent No. 7,387,244 ("the '244 Patent"), which was subsequently acquired by ES&S as ES&S is the successor-in-interest to Election Systems & Software, Inc. A true and correct copy of the '244 Patent is attached hereto as Exhibit "C" and is incorporated herein by reference.

14. Summarily stated, the '244 Patent involves the invention of a Real Time Audit Log, or "RTAL," that generates a step-by-step accounting of the votes cast and all other steps taken with a voting machine so that in the unlikely event of a failure of any kind or the need for audit or recount of the election arises, the RTAL provides an independent, accurate, secure, and confidential accounting in electronic format of all actions taken on the voting machine while simultaneously maintaining the privacy of an individual person's ballot.

15. ES&S is the owner and assignee of all right, title and interest in and to the '244 Patent, including the right to assert all causes of action arising under said '244

Patent and the right to any remedies for infringement of it.  As owner of the patent and the rights to the invention secured by the same, ES&S incorporates the patented RTAL technology into certain voting machines that it manufactures.  ES&S installs and uses the "RTAL technology in such voting machines as the iVotronic® DRE.

*ES&S' Use of Its Patented Technology*

16.     ES&S only licenses and does not sell the right to use its patented IMR technology, "smart technology," or RTAL used in its voting machines.  ES&S' typical contractual relationship with its customers includes the sale of hardware components only to the customer, with an accompanying license of the proprietary and confidential firmware, which includes the above-described patented technology depending on the voting machine(s) involved in the transaction, which can then be used in conjunction with the hardware.

17.     Through this standard contractual relationship, as well as other steps taken, ES&S tightly controls the use of its proprietary and confidential firmware and patented technology. For example, any subsequent sale of a voting machine—such as but not limited to the M100™ and iVotronic® DRE—is expressly prohibited unless an ES&S technician first removes the firmware, including the patented technology, or the customer certifies to ES&S' satisfaction that such firmware and patented technology has been removed and destroyed before the hardware is sold to a subsequent buyer.

18.     ES&S does not allow the use of its patented technology or its firmware without a license from ES&S.  Indeed and furthermore, the licenses ES&S grants to its customers are non-transferable licenses.

*RBM's Prohibited Conduct*

19. As part of its business, Defendant has obtained, and continues to obtain, ES&S voting machines, including but not limited to an unknown number of M100's, iVotronic® DRE's.

20. Also as part of its business, Defendant has supplied M100's, iVotronic® DRE's and/or other ES&S voting machines to its customers for use in elections.

21. Also as part of its business, Defendant has supplied and operated an M650™ for customers for use in elections.

22. However, Defendant does not have, and has never had, a license to use ES&S' software, firmware, or patented technology. Accordingly, Defendant is not authorized to possess, use, or distribute any ES&S voting machine that has its software, firmware, or patented technology in place for any commercial purpose.

### FIRST CLAIM FOR RELIEF
### (Patent Infringement of the '644 Patent)

23. ES&S incorporates the allegations of paragraphs 1 through 22 as if fully set forth herein.

24. Defendant has and continues to infringe, directly and/or indirectly, the '644 Patent in this judicial district and elsewhere in the United States by supplying ES&S voting machines such as the M100™ to its customers for use in elections.

25. ES&S has been and continues to be damaged by Defendant's infringement in an amount to be determined at trial, but which necessarily includes a reasonably royalty.

26. However, money damages cannot adequately compensate ES&S for the immediate and irreparable harm to ES&S' reputation and goodwill for Defendant

supplying voting machines it acquires from one state to customers in another state where the certification specifications and standards for voting machines or the firmware/software used in conjunction therewith may be different. The use of a non-certified voting machine or non-certified firmware/software incalculably and irreparably harms ES&S' reputation and the reputation of its products, and it also calls the integrity of the election in which such non-certified voting machines or non-certified firmware/software are used.

**SECOND CLAIM FOR RELIEF**
**(Patent Infringement of the '329 Patent)**

27. ES&S incorporates the allegations of paragraphs 1 through 26 as if fully set forth herein.

28. Defendant has and continues to infringe, directly and/or indirectly, the '329 Patent in this judicial district and elsewhere in the United States by supplying ES&S voting machines such as the iVotronic® DRE to its customers for use in elections.

29. ES&S has been and continues to be damaged by Defendant's infringement in an amount to be determined at trial, but which necessarily includes a reasonably royalty.

30. However, money damages cannot adequately compensate ES&S for the immediate and irreparable harm to ES&S' reputation and goodwill for Defendant supplying voting machines it acquires from one state to customers in another state where the certification specifications and standards for voting machines or the firmware/software used in conjunction therewith may be different. The use of a non-certified voting machine or non-certified firmware/software incalculably and irreparably harms ES&S' reputation and the reputation of its products, and it also calls the integrity

of the election in which such non-certified voting machines or non-certified firmware/software are used.

### THIRD CLAIM FOR RELIEF
### (Patent Infringement of the '244 Patent)

31.     ES&S incorporates the allegations of paragraphs 1 through 30 as if fully set forth herein.

32.     Defendant has and continues to infringe, directly and/or indirectly, the '244 Patent in this judicial district and elsewhere in the United States by supplying ES&S voting machines such as the iVotronic® DRE to its customers for use in elections.

33.     ES&S has been and continues to be damaged by Defendant's infringement in an amount to be determined at trial, but which necessarily includes a reasonably royalty.

34.     However, money damages cannot adequately compensate ES&S for the immediate and irreparable harm to ES&S' reputation and goodwill for Defendant supplying voting machines it acquires from one state to customers in another state where the certification specifications and standards for voting machines or the firmware/software used in conjunction therewith may be different.  The use of a non-certified voting machine or non-certified firmware/software incalculably and irreparably harms ES&S' reputation and the reputation of its products, and it also calls the integrity of the election in which such non-certified voting machines or non-certified firmware/software are used.

## FOURTH CLAIM FOR RELIEF
### (Conversion)

35. ES&S incorporates the allegations of paragraphs 1 through 34 as if fully set forth herein.

36. Defendant has obtained possession of, and is using, ES&S' proprietary and confidential firmware/software for a commercial purpose and to Defendant's benefit.

37. However, Defendant's possession and/or use of ES&S' proprietary and confidential firmware/software is unauthorized and without license or permission to do so.

38. Defendant's unauthorized possession and/or use of ES&S' proprietary and confidential firmware/software constitutes wrongful exercise of dominion, ownership and control over ES&S' property.

39. ES&S has been damaged by Defendant's unauthorized possession of ES&S' proprietary and confidential firmware/software in an amount to be determined at trial.

40. However, money damages cannot adequately compensate ES&S for the immediate and irreparable harm to ES&S' reputation and goodwill for Defendant supplying voting machines it acquires from one state to customers in another state where the certification specifications and standards for voting machines or the firmware/software used in conjunction therewith may be different.  The use of a non-certified voting machine or non-certified firmware/software incalculably and irreparably harms ES&S' reputation and the reputation of its products, and it also calls the integrity of the election in which such non-certified voting machines or non-certified firmware/software are used.

## FIFTH CLAIM FOR RELIEF
### (Violation of Section 43(a) of the Lanham Act—Unfair Competition)

41. ES&S incorporates the allegations of paragraphs 1 through 40 as if fully set forth herein.

42. Defendant's conduct violates Section 43(a) of the Lanham Act because Defendant make statements to customers, potential customers, customers of ES&S, and others that use false or misleading descriptions of fact or representations of fact that are likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with ES&S or as to the origin, sponsorship, or approval of Defendant' goods or services.

43. Defendant also misrepresents the nature, characteristics, or qualities of their goods and services or commercial activities.

44. More specifically, and by way of example and not limitation, Defendant directly or indirectly makes false or misleading statements as to its authorization or ability to provide ES&S voting machines for use in elections when such voting machines have ES&S' software/firmware that Defendant is not authorized to have or use.

45. By way of another example and not limitation, Defendant directly or indirectly makes false or misleading statements as to the certification of an ES&S voting machine offered by Defendant for use in elections in a state other than the state from which Defendant may have acquired such voting machine.

46. By way of another example and not limitation, Defendant directly or indirectly makes false or misleading statements as to its authorization or ability to accept for commercial use ES&S voting machines with the firmware/software still loaded on the machines.

47. All statements alleged here are made by Defendant in connection with Defendant' goods and/or services.

48. ES&S has been damaged by Defendant's conduct in an amount to be determined at trial.

49. However, money damages cannot adequately compensate ES&S for the immediate and irreparable harm to ES&S' reputation and goodwill for Defendant supplying voting machines it acquires from one state to customers in another state where the certification specifications and standards for voting machines or the firmware/software used in conjunction therewith may be different.  The use of a non-certified voting machine or non-certified firmware/software incalculably and irreparably harms ES&S' reputation and the reputation of its products, and it also calls the integrity of the election in which such non-certified voting machines or non-certified firmware/software are used.

### SIXTH CLAIM FOR RELIEF
### (Tortious Interference with Contract/Business Relationship)

50. ES&S incorporates the allegations of paragraphs 1 through 49 as if fully set forth herein.

51. ES&S had a valid business and contractual relationship with Vigo County, Indiana, as one of ES&S' customers.  This relationship included licensing terms that prohibited Vigo County from transferring or otherwise providing ES&S' software, firmware, and/or patented technology to anyone without ES&S' written authorization.

52. RBM interfered with ES&S' contractual and business relationship with Vigo County by actively soliciting Vigo County to breach such contract and relationship, which RBM knew Vigo County and ES&S had, by causing Vigo County to terminate its

contract with ES&S without cause and in breach of the permitted termination provisions as well as to provide RBM with the ES&S' voting machines for which Vigo County had purchased the hardware and licensed the software, firmware, and patented technology. However, neither Vigo County nor RBM had ES&S' express or implied authorization for the transfer of ES&S' software, firmware, and patented technology to RBM or for RBM to possess the same.

53. RBM's interference was intentional in that RBM either specifically intended the interference even if its actions were done for other/additional purposes, or acted with knowledge that the interference was substantially likely to result.

54. RBM's interference was unjustified in that it went beyond the privilege of a competitor and provided RBM access to ES&S' proprietary software, firmware, and patented technology, which Vigo County was not authorized to provide and that RBM was/is not authorized to possess or use.

55. RBM's interference was the proximate cause of damage to ES&S in at least lost revenues, license fees, and royalties and in an amount to be finally determined at trial.

WHEREFORE, Plaintiff, Election Systems & Software, LLC. prays for judgment in its favor and against Defendant RBM Consulting, LLC, as follows:

    a. An award of actual damages it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendant as a result of the infringement and other conduct set forth above, and with respect to patent infringement in at least the amount of a reasonable royalty rate, in amounts to be fully determined at trial;

b.   An award of increased damages pursuant to 35 U.S.C. § 284;

c.   A temporary and permanent order enjoining Defendant from engaging in future acts in violation of the patent laws of the United States with respect to ES&S' property;

d.   A temporary and permanent order enjoining Defendant from engaging in future acts in violation of the unfair competition laws pursuant to Section 43(a) of the Lanham Act with respect to ES&S' property;

e.   A temporary and permanent order enjoining Defendant from possessing or otherwise exercising dominion and control over ES&S' property;

f.   A temporary and permanent order requiring Defendant to return to ES&S all ES&S firmware, software, and intellectual property for which RBM does not have a license or other authorization to possess or use;

g.   An award of attorney's fees, prejudgment interest, and costs of this action as allowed by law; and

h.   For such other, further and different relief as this Court deems just and equitable.

## JURY DEMAND

ES&S respectfully requests trial by jury in Omaha for all issues permitted to be tried to a jury.

Dated this 29th day of August, 2014.

          ELECTION SYSTEMS & SOFTWARE, LLC., Plaintiff,

By: *s/ Daniel J. Fischer*
   Michael C. Cox, #17588
   Daniel J. Fischer, #22272
   David A. Yudelson, #23257
   KOLEY JESSEN P.C., L.L.O.
   One Pacific Place, Suite 800
   1125 South 103rd Street
   Omaha, NE  68124-1079
   (402) 390-9500
   (402) 390-9005 (facsimile)
   Michael.Cox@koleyjessen.com
   Dan.Fischer@koleyjessen.com
   David.Yudelson@koleyjessen.com

Attorneys for Plaintiff.